My name is Jeff Pollack, and I represent A.D. Stradrick on Appeal. You've got a summary judgment granted against you, and you've got two issues that you've got to overcome, whether the New Jersey Department of Environmental Protection in effect advocated its responsibilities or whether you have a claim for bankruptcy. But why don't we start with the first one? I was looking at this thing, trying to make sense of this because there are so many issues to cover and our time is limited. I agree completely. I believe the fundamental failure in the bankruptcy court's decision, district court's decision, and my adversary's position is that they believe what we've demanded is a claim, that what we've stated is a claim. And therefore, the failure in that regarding is exactly what your Honor is directing me, which is to state law. The starting point here is whether New Jersey law recognizes this, a right to injunctive relief. And that is exclusively and solely what the Environmental Rights Act provides, 2A35A-4. It says that the only relief you can obtain for a person who is affected is injunctive relief. The law also states that 2A35A-3, those are both the Environmental Rights Act sites, that a historic discharge is an ongoing contamination. The problem that I have here is you've got Flint Cote that owned this one from 45 to 72, a third party from 72 to 84, and then from 84 to when did Frederick own it? Let's say from 84 to present. Okay. And has Frederick actually had to pay out any money currently for deamidation remediation? Frederick has paid out some money, but respectfully, and I mean no disrespect, I think it's completely irrelevant because we are not seeking contribution. You're seeking to have the ability to make sure that the cleanup takes place, at least with regard to the Torrey asphalt area, right? The entire line of logic which the bankruptcy court and district court went through on the same issue is have you spent money? In the bankruptcy court, Judge Blayton, he said if you haven't spent money, you can't have a right. You can't have a claim. And my position is, and I told the court then and I will repeat it now, that's irrelevant. The only question in New Jersey law is was there a historic contamination? And there is. JA-27 and JA-71-2 and 701 are each admissions by Flint Code that they own the property from 45 to 71. If I have the dates a little bit off, I'm sorry. Yeah, I thought it was 72, but that's okay. Okay. At that point in time, they're not writing to just someone. This is not some internal memo. They're admitting to the State Department of Environmental Protection, we had hazardous waste on site and we disposed of it on site, and their course of conduct has indicated that they're responsible. In 1984, when the state came to them and said, hey, you filed in bankruptcy, is that going to make a change? Are you now going to walk away from the site? In 85, Paul Dritzis from MacArthur and English, on behalf of Flint Code, writes back and says, yes. Now, he does it in a slightly softer fashion, but their course of conduct is that they then submitted a remedial action work plan. In short, for this site, they have taken responsibility from the beginning to the end, and, therefore, that gets me to the state laws. There is a discharge where I believe the fundamental failure here is this. Under New Jersey law, once you dispose of a hazardous waste on site, you are liable until the end of time, no matter how many transfers there are, no matter who else buys it, no matter what anybody else does. You are strictly, jointly, and steadily liable. Are you saying that New Jersey Department of Environmental Protection has not done its job here in overseeing this? Absolutely. We've said that unequivocally and clearly, and New Jersey law supports it. They've done many indications of deficiencies. Yes. And the problem that I have is the last significant report you have is the Hochreiter report from 08, and it looks like quite a bit of work was done from 08 at least to 11 or 12. So what specific evidence is there that remediation could have been achieved faster? Remediation has not been achieved, and the last communications we have from the state, and I'll give you the exact sites, Your Honor, are in the DEP reports. If you bear with me, I'll get them for you. Here are the state complaints. It's 492 to 538. So JA 492 to 538. That starts a litany of communications from the state from about 1984 to 2011. In 2011, which is the last communication we have in this record, I couldn't supplement because it would be outside the record, but I can promise you there is no statement from the state since then. They have never, ever accepted that what Flint Code has done is finished. Flint Code keeps on saying, they've been saying this for 12 years, that they're going to do it this way, that's what they're going to do. And the state wrote back a four-page single-spaced notice of violation in 2011 saying you are not done. But what evidence do you have post the Hochreiter report that there are continuing problems with regard to the, let's take, for example, the tarry asphalt area? Sure. First of all, Hochreiter goes on site in 2008, sees visual contamination, does sampling on site. He says there's contamination. He attaches documents to that and relies upon the data from Flint Code. Flint Code says we're not going to address this. Okay, that's eight years ago, but what about since then? Okay. For example, one of the issues that Hochreiter raises is natural resource damages, what are called NRDs. There is not one document in the record that they have ever addressed NRDs. They have never even mentioned the word natural resource damages, and that is a direct liability right under the Spill Act. So if I have a claim under the Environmental Rights Act, which we do, they have never, ever addressed it. There's no record to support that they have. The state in 2011, to address your concern, Judge, sends a four-page single-spaced notice of violation. That's the last document we have in the sequence. Critically, what has Flint Code done? Hochreiter certifies, quote, to a reasonable degree of scientific certainty there is contamination on site and everything in the site arises from Flint Code. What do they do on the other side? Flint Code never produces an expert report. Flint Code doesn't have one person, whoever stands up and says, under oath, to a reasonable degree of scientific certainty, we are done. So the last evidence in this record is from 2008 to 2011, which are the DEP communications, and we have not been allowed to engage in subsequent discovery with them because of the automatic stay. But that, you come back to my problem. You can, as a citizen, can step in if DEP is not doing its job. You're saying DEP is not doing its job, but you just quoted me, or noted to me, that there is a four-page single-spaced deficiency report, and that's one of many. So how can I say that DEP is being negligent in terms of what it's doing here? Right. The Environmental Rights Act allows us to step in where the state has not acted or where the state has acted incompletely or incompetently. In the Monmouth case, where, in this case, by the way, just for time frame, 1994 is when Flint Code initially notifies the DEP, we've got a problem here. In 2006, 2008, is when we file our notice of claim. So Flint Code in 1994 owned up to this right away? They didn't own up to it right away. In fact, they apologized because they were 12 years late in admitting to it. But they said to the state, if there's a penalty, we're coming in under the amnesty program because they had not admitted to it. But, yes, they admitted to it in 1994. In 2008, we file our Environmental Rights Act notice. That is 14 years after they started their mediation. How do we know that that's sufficient? Because the Monmouth case, which is the only case directly to address timing, says that 12 years is more than sufficient for the state to have failed to act. Buenavagio, by the way, in the court, district court, actually took the opposite view. We had delays. So what are the 12 years that the state did not act? In the 12 years, the state never wants it. What is that time period? Is it 94 to 06? 94 to 2006. So the DEP never comes in. But since that time, they've done a fair amount. Now, you might be saying it's incompetently, but how do I make that determination based on this record? Well, first of all, natural resource damages, that's one example where we complained. The state has never asked for natural resource damages. We have. And where the state acts incompletely, we are allowed to act. And if you want me to, I can go through the New Jersey Environmental Rights Act law on this. No, I've got the law down. You've got two laws here, obviously. The first one you're mentioning, and then the Stowe Act. Right. But the pure act of delay. Now we are at 24 years. That is twice the amount in Monmouth where the appellate division of the New Jersey Superior Court said that is more than constitutes sufficient delay for a party to step in and say, you know what, state, you're advancing. That was the word they used. We're now at 24 years. How many acres is this property? I'm sorry? How many acres is this property? I've gone through it. I don't know. I think about seven. It has the initial two partials, and they split it. And what portion of that roughly seven acres or so is contaminated? We don't know. One of the things we're complaining of, and the DEP has been complaining of, is they have never done the first step in remediating hazardous waste, as you may know. It's a phase one study. You've got to delineate. You do phase one, you do paper. Phase two is you actually have to go figure out what's out there. Flint Code has taken the position, and my concern, Judge Ambrose, with where this question is heading is in 2011, Sidley and Austin's counsel stood up in bankruptcy court and said, we are done. We contest any liability into the future, anything whatsoever. The state of New Jersey took no action in this case. I approached Rick Engel, and so did they, by the way, who was the Deputy Attorney General, and said, hey, there's this hearing. You've got to show up. They did not participate. So right now, potentially, unless the Kaiser decision gives them the ability to step in, they're barred from taking any injunctive action against the state because of the Supremacy Clause, the injunctive relief. They've already asserted their demands, but they have failed to perfect them. I'm here today to ask relief from the preliminary plan injunction, because if we don't and we get saddled with this, Flint 80% of it. So what would you do if there were the injunction lifted? Yes, sir. What would you do? I would file suit immediately and probably state court, or the federal court would be fine with me, and say, look, we want to compel action by the debtor, one, by Flint Code, to take action, to do the proper delineation they have failed to do. I have that right under the Environmental Rights Act and the Spill Act, to compel them to proper delineate the site and to remediate it. I'm not asking for a dime. And that gets me to the question of whether it's a claim. We do not want money. We've never asked for money. We're not asking for penalties, fines. We can't, by the way, as a matter of law. So the only relief I can ask for is injunctive relief. And what we're trying to seek them to do is to do the cleanup after 24 years. They, by the way, are doing a very different cleanup, and they've now contested any responsibility to do cleanup. They've done that on the open record. Their remedial effort is designed at, there's two different levels of remediation. There's probably three, but really two that count. One is residential. One is industrial. This property is mixed industrial, meaning it can be residential or industrial. They have chosen the lesser standard. The property we bought was allowed to be used for residential. We're compelling them to clean up to the full standard. And the state, by the way, has taken no position on this at all. So if Flintcoat is allowed to get away with this, what's going to happen is this property is not going to be remediated to either standard because they've said we contest any liability. We're not doing any further delineation. And now there's a problem down the road as a result of the district court's decision, which I think is reversible error. We don't even get the rights that a party under Kaiser would have had, which is in Kaiser's decision, as the court may know, in that case a party filed an action after the plan had been approved in California. They come back and the party who's debtor says the plan injunction bars it. And this court said, no, if the fact is you are looking for injunctive relief, and the only relief I can get under the Environmental Rights Act is injunctive relief. Before you sit down and we get Mr. Morrissey up, let me just run through the five areas that were initially identified. Yes, sir. The historic fill was the first area, and Flintcoat's expert opined in 2011 that Flintcoat is not responsible for the historic fill. And the state of New Jersey has expressly and squarely rejected that. They did that in 2006. They wrote to Flintcoat and said, we disagree. There is no document, whatever, saying anybody else agrees other than Flintcoat. So that is one area of failure. And the second is the vault that held an underground fuel oil storage tank. That's been dealt with. The underground vault has been remediated. That's been remediated, okay. Yes, sir. Because I understand that Flintcoat paid for Frederick to remediate. Yep. Third is the catch basin and piping. The catch basin, I believe, has been remediated. The piping, we still are waiting for delineation. We don't know. Okay, the drainage pipe. The drainage pipe has been addressed. The groundwater. Groundwater has never been investigated. Flintcoat refused to do so because they don't want to do what they have to do under New Jersey's technical regulations. I thought in 2010 that you had agreed with the DEP that groundwater was not threatened. We agreed in that one area that groundwater was not threatened to the best of our knowledge based upon the current data. What we want is what the technical regulations require. And this isn't just some wishful thinking on my part. The tech regs are designed there as a result of the state as a system. And the state system is, well, if you have a contaminated property, you have to comply with a certain set of testing protocol in order to verify the data. That's done at the end. Flintcoat refuses to do the testing based upon the current information. We don't know that there is contamination. And that's probably a good segue to our beginning of questioning from Mr. Morrison. We'll get you another bottle. Yes, Your Honor. Any questions? No, I have none. Frank, any questions? Frank? Frank? Any comments? Good morning. Brian Morris here for the Applebee's, the Flintcoat Company and Flintcoat Mines. I guess my first question is, and it sort of picks up on where Mr. Pollack left off, did Flintcoat ever perform the investigations that Mr. Hochreiter claimed were essential for remediation? What Mr. Hochreiter said in 2008, effectively, is that he agreed with the requests that were made by DEP in its 2008 notice of deficiency, which as you pointed out, Judge Ambrose, was one of many. Our position is that we have Did they do a preliminary assessment report? They have done extensive investigation, and they've done the investigation that DEP has required. What Frederick has alleged is a violation of the Spill Act, which requires them to establish a discharge in the property. Our position is that they don't have standing to compel compliance with every technical regulation of the DEP if DEP is not requiring that. But that sort of plays into Mr. Pollack's hand, because if DEP is not requiring it, he's saying they should have required it. Therefore, we need to, as a citizen, be able to step in to make that requirement abided by. I think you identified the right question a little bit earlier, and it's a question that Mr. Hochreiter does not address, which is when Judge Fitzgerald was faced with the summary judgment motions in 2012, the question is, what remediation needs to be done now? Can they show now in 2012 both, and they need to show both, abdication of enforcement responsibility by the DEP and, secondly, ongoing pollution in 2012? Between 2008 and 2012, there's extensive remediation performed, including the groundwater sampling that Mr. Hochreiter requested. If Frederick has a dispute with the quality or the sufficiency of the groundwater testing that's been performed, there's no evidence in the record as of 2012 that it's deficient. What they have is somebody in 2008 saying more should be done, more is done. There are five groundwater- From 8 to 12, what was done by Flintcoat? Five groundwater monitoring wells were drilled. Ninety-eight soil samples were taken from 78 different locations on the property. Sixteen hundred tons of soil was excavated and removed in 2011. There is a declaration from Flintcoat's environmental experts, two, in fact, from 2011, indicating that Flintcoat believes they have complied with all steps DEP required, and DEP has not contested that. There are two open issues at the time of summary judgment. As you know, Judge, one is the vault, which Frederick agrees is on them, and one is the historic fill. The historic fill was placed on the property prior to Flintcoat's ownership, prior to Frederick's ownership. DEP has said- So it's prior to 45? Yes, yes. It's endemic to this area of New Jersey. It's on all the surrounding properties. It was fill that was used to solidify the wetlands there, and it contains construction material, including some asbestos. It is not an ongoing discharge, but it needs to be what DEP has said- Is this property roughly seven acres? I believe it was a 6.5-acre property subdivided, and what's at issue is five acres. And what portion of this property are we talking about with regard to the fill? The fill is endemic to the entire property. It's endemic to all properties. What Frederick said in 2010, in the same letter that you discussed earlier, where they accepted the groundwater testing, was that their only remaining concerns at that point was the Tarry Asphalt Area. And the Tarry Asphalt Area, since 2008, has had 1,600 tons of soil removed. So the record as it exists in front of the Bankruptcy Court is, in 2012, we have a remediation that's performed, principally in 2011, a substantial excavation of 1,600 tons with no further requirements from DEP except the two issues we've discussed- historic fill, which DEP says can be addressed with the deed notice that the property owner just does not consent to. So from our standpoint, he has not established his burden as the non-moving party on summary judgment to put in some evidence to contradict what's in the record, that there's any possible way that Flint coat is liable for ongoing contamination. He doesn't have any ongoing evidence of a discharge. And secondly, and he needs to do both, any ongoing evidence of abdication by DEP. I think there's two conflicting parts of Frederick's argument on that point. On the one hand, they say we should be able to bring a claim because DEP is not satisfied. They haven't issued a no-action letter. But that actually undercuts their claim. As the New Jersey courts have said in Superior Air and Panaccione, an ongoing DEP investigation or remediation preempts the private ERA action unless they complete and prove deficient agency action. And what's completely missing in the record is any statement from them effective 2012 explaining what about the remediation that occurred from 8 to 12 still needs to be done and is still deficient. Is the remediation still ongoing? It is not. There has been some restoration work that's been negotiated by the parties. I believe that's occurred as recently as this year in which Flint coat has added some topsoil and covered up some of the wells that have been drilled as part of the investigation. Has he been given a sign-off by DEP? No. It's not in the record, but my understanding is there's still this open issue of whether the deed notice is going to be given or not. So DEP has not given a sign-off, but DEP has not also asked for any further action from Flint coat. So what's the future hold here? When is this ultimately going to be resolved? I think to DEP's perspective, the property can't be sold until there's an agreement on how the deed notice is resolved on the historic fill, but that is not an ongoing discharge for which Flint coat is liable, and that's not a failure to act or failure to supervise the property by DEP. DEP has provided the solution that can solve the problem. It's just the property owner that has not consented to it. So what's the prognosis for an ultimate resolution of this in terms of getting the deed notice? I think that's entirely dependent on Frederick, whether they want to consent to it or not. Okay. So in 12, when you were before Judge Fitzgerald, essentially there's not been much done since then? That's right. The substantial remediation that DEP required, and this is what the Hockwriter Declaration does really is not criticize DEP's action. They agreed with what DEP requested in 2008. What DEP requested in 2008 is completed in 11, and DEP has never contradicted that. And so what Judge Fitzgerald had before her was a record of the correspondence which you've seen between the agency and Flint coat, Flint coat's environmental experts' declaration that, from our perspective, what has been accomplished conformed to everything that DEP has required of Flint coat, and that there is no contrary evidence in the record from Flint coat. A key issue here that we've kind of been dancing around is this right to sue. And if you're saying that the DEP is done and that the only thing left is whether or not it will be consented to by the appellant, is there then not a dispute of fact that should be tried in the state court where they want to sue? Is there not something left over that would give them the right to sue because DEP is not doing anything anymore? And they said they're not going to do. So answer me there. Sure. There's not, because I think they need to show a dispute of fact on both of two points. First, that what DEP has done here is an abdication. It's arbitrary and capricious. If DEP is acting and just has not released, frankly, either party from the property until this deed notice issue is resolved, DEP has exercised jurisdiction. And they have not come in and provided any evidence that's recent as to 2012 showing what they would ask DEP to do differently to remediate the property. And secondly, they have to show an ongoing violation for which Flint coat is responsible. And the only evidence in the record on the current state of the property in 2012 shows that anything DEP has asked Flint coat to fix has been fixed. Secondly, even if they established a dispute of fact on both of those points, as they need to, they still have a contingent claim for contribution as a matter of bankruptcy law, and it's properly disallowed. Under 502E1B, they had the option under New Jersey law. They say they don't, but what they are asserting under the ERA is a violation of the Spill Act. The ERA provides no substantive relief. It's a remedy for a violation of any New Jersey law. And so to prevail on an ERA claim, they must allege a predicate violation of another New Jersey law. So they've alleged violation of the Spill Act. The Spill Act gives them, as a co-owner and co-liable party, the right to contribution. So they have a claim then under this court's decision in Torrico. The claim is contingent because they have not incurred any response costs. And 502E says for any party that's co-liable with the debtor who has a contingent claim, that claim is disallowable. I thought Mr. Pollack said, and I thought they had not incurred any response costs, but he's saying that they did. Can you, there seems to be a tension there. I'm not sure what they've done since the record's been closed, but to my knowledge, there's nothing in the record indicating that they've incurred any response costs. And we agree with Mr. Pollack that they have not requested any response costs in the bankruptcy action. But under this court's decision in Torrico, because they had the option to, they could have, as a co-liable party, requested contribution. Contribution, right. Then they have a claim. And they are a co-liable party. They say they're not, but under their own allegations, co-liability is very broad in New Jersey, the New Jersey Supreme Court's decision in March. But to have a contribution claim, you actually have to make a contribution. You have to do the work. That's right. And I think that's appropriate as a matter of bankruptcy law where you have a Chapter 11 reorganization, particularly here in the context of a 524G reorganization where you have, and I think all the 524G cases that this court has had has both expressed this personal liability claim and environmental claims that if you're a co-owner of a property, as opposed to the state, this wouldn't apply to a regulatory agency trying to enforce its environmental laws or even a private citizen like an environmental rights group bringing an ERA action. But if you're in the subset of people who can bring an ERA action because you're a co-owner of the property and you're jointly and severally liable under Marsh, which says if you've owned the property and there's been any continuation of the discharge during your ownership, even if you were an active polluter, you're co-liable, then you're a co-liable party. When this was first discovered, or I guess Frederick brought the property in 1994, is that right? I think it was 82. They discovered the drum in 93, 94. In 94, you're right. Right. And so then Flinko comes in and says what at that time? At that time, Flinko enters into the Memorandum of Agreement, the voluntary program, saying this may have been placed on the property during our ownership. We don't know, but we owned it for a long time, and we conducted rubber manufacturing activities as did some of the other owners, and so they are willing to do the voluntary remediation. And then it sounds like nothing happened for 12 years? Well, they do some study. Now, their access to the property is always controlled by the current owner, and so as the record indicates, there's a lot of back and forth between the parties on when they can get access, so a lot of the delay is settlement discussions, if you will, or discussions over who can access the property between Flinko and the current owner. But there is some work done. The vault is taken care of in that period. The drainage pipe and catch basin are all taken care of at that point. Flinko and its consultants propose to DEP that the tarry asphalt issue can be addressed effectively through a cap of asphalt, and DEP looks at it and demands more. It demands more testing and ultimately demands the excavation of the 1,600 tons of soil, which is performed. Has there been any evidence of leaching? Not on the record and not since the record to my knowledge. What Flinko puts in the record after the excavation is that they have done groundwater testing in their perspective to DEP's requirements, and none of that shows any problems. And what their experts said in 2008 is more groundwater testing should be done. More is done over the next four years. If there's a dispute about the quality of what's been done, they have not preserved that in the record, and therefore I think they need to establish every element of their claim on summary judgment, and they just haven't done that here. The record Judge Fitzgerald had, all the evidence of the current state of the property, was from the debtors and was from DEP, and there's just, A, no issue of an abdication by DEP. If DEP is still acting, DEP preempts, and they haven't shown. Well, it doesn't look like. Did DEP do much between 1994 and 2006? They did. There's an extensive range of correspondence in that period. It sometimes goes a year between letters, although frankly their burden is to show is DEP abdicating its enforcement responsibility in 2012. It frankly doesn't matter. I understand. I get that. It looks like DEP jumped on it, but at some point it was long after the discovery in 1994 of the problem. Frederick has said, and we quote in our brief, that 15 to 20 years is not unusual for a property of this size and length. I'll speak briefly, too, to the 12-year issue they point out as saying that DEP took more than 12 years. In the Monmouth case, there were two important facts there. The first was that DEP issued a notice of prosecution, which has never been issued against the debtor in that case 12 years ago, and then there was no cleanup for 12 years. So the court in Monmouth had a situation where nothing was being done at the property for 12 years, and the court said at that point that that's too long. Here you have a remediation that's been ongoing, the bulk of which happens in 2011, and none of that aspect of the record is contested by A.D. Frederick. So we think this is a very different situation. I see my time is up. It's just not a situation where DEP hasn't taken any action for 12 years. All right, thank you very much. Thanks. Mr. Pollack. One question I have for you. Your brief makes numerous assertions about the state of the property without, I don't see it citing any record evidence, and I'll give you an example. On page 12 of 13, you say that the pollution, quote, persists and continues to degrade and release fresh contaminants, close quote. What evidence is there in the record? On the record right now, there's very little other than the statement in Hawkwriter's report and the fact that the last communication we have from the state, which is May 13, 2011, because remember at this point the record is, at this point I'm not allowed to prosecute because of the automatic stay, JA 531, May 13, 2011. Tire area, the DEP says there's still contamination. There is still visual contamination on the site today. That's beyond the record, but you asked a second ago is there any problem today. In the record, the last communication we have. What is the precise contamination today? It's mostly tarry asphalt and let's put it this way. When you walk on the property on a hot summer day, there is black ooze coming through the surface of the soil. There is literally stuff on your shoes. So when they say they're done, the visual, and it's beyond the record. Well, they had proposed at one point to cover it over, especially if there was no leaching, and you would have the problem resolved, but that was not acceptable to Frederick? That's a partial truth. They agreed to cover over a very small area. The question is what was the area going to be? The problem was they agreed to put down two inches of macadam in order to cover the problem over. The problem is this is an active area. So if you don't put down a proper engineered structure, it's going to crack, and then it's going to become our problem three years from now. You haven't solved the problem. And, by the way, I want to be mindful of my time here, but there is, in order to show a discharge, all I have to show under the Spill Act and the Environmental Rights Act is there was a discharge and release at the time. They have admitted it is their waste. Don't you have to show that it's continuing? I don't. I think that's probably the biggest misunderstanding here. I don't have to show that they're out there with a sprinkling can, putting new asphalt on the place or decontaminating it every day. What Ventron said when they said – I thought it was under the Spill Act. You're saying that's incorrect? Ventron said two things were really important. One, it said rely upon the Spill Act, but it also said rely upon strict joint and several liability based upon common law. What it said was it is absolute liability of strict joint and several liability for the person who discharges until it's remediated. And that has never been done, at least as the last evidence we have in the record. He keeps on saying the DEP has not contradicted. The DEP has never agreed. The last communication they have in the record is May 2011, citing multiple violations on the site. They specifically reject the concept at JA501 that this is historic fill, the argument they make today. They made the same argument seven years ago. I'm assuming by historic fill he means fill that was there prior to 1945. First of all, A, it's not true. It's not in the record. B, it would not matter. They are strictly jointly and severally liable. The reason you make the historic fill argument is because if it's historic fill, there's a subsection of the regulations that says, well, it really is something that's just kind of indigenous to the area, so it's not really our problem. They tried that argument in 2006, and the DEP said at JA501, we reject it. It is not historic fill. So the argument that it's historic fill is unsupported by the record. Your Honor, my time has expired. May I continue very briefly? Yes. We're at two more minutes. Okay. With regard to the deed notice, they keep on saying we haven't agreed to the deed notice, which makes A.D.S. Frederick sound like we're just some uncooperative people. Here's the problem. The deed notice is a limitation for them. It's a benefit for them. It's not something they bargained for. We don't have to agree to a deed notice. When you buy property, it is a bundle of rights. The bundle of rights include residential, mixed industrial, and light use industrial. What they're trying to do is say, well, tell you what. Why don't you agree to the deed notice? What's being suggested to be put on the deed notice? That we say no residential development and that we agree that there will be no use of certain areas of the property. So basically we pay the property. They have the duty to clean up. But it's a factual question. A, are we really required to do it? But B, whether it's sufficient. And it's also a factual question, as Judge Nygaard pointed out, whether the contamination has been addressed. Right now they've got no statement from their own person who is not an expert. She was an engineer. She never opined to a reasonable degree of certainty. And she never said we are done. What she said is this is what I intend to do. And the problem is that is not satisfactory. And I'll end on this point. We talked at length about whether the state has to act. And I just want to point to the court too. Monmouth County, which it says after 12 years it seems reasonable to conclude the DEP of dancing, the DEP has been effectively and not acted effectively. Clearly after 24 years, which is today, the DEP has not acted effectively. Or 22 years, right? Well, it's 1994 today, 2006. Or 22, I'm sorry. I can't add. You're right. I'll get better at math. My wife keeps on telling me that. That's why we're lawyers. I'm sorry. But the last point I would raise in that is, as we point out in our brief, and I'll end on this point, the state never addressed natural resource damages. The state never addressed off-site groundwater contamination or off-site flow. Those are all issues we addressed. So clearly the state has not acted completely. Thank you, Your Honor. Thank you very much. Thank you to both counsel for very well presented arguments. And we'll take the matter under advice.